Mitch Wallis, CA Bar # 227253
1286 University Ave #338
San Diego, CA 92103
Telephone: (619) 295-5475
mvegan@yahoo.com
Attorney for Plaintiffs

# United States District Court
# Central District of California

| | |
|---|---|
| LWCI, LLC, a California Limited Liability Company, Pilot, Inc., a California corporation dba Pilot Automotive, and Casa Hernandez, Inc., a California Public Benefit Corporation,<br><br>   Plaintiffs,<br><br>   vs.<br><br>David Vargas, an individual, Tiger Eye Capital-Ohlone Tribe Advisory Corp, a California corporation, Ohlone Tribe of Carmel First Settlers of Chino Valley, Inc., a California corporation, Blue Fire Holdings Native American MGT, Inc. a California corporation,<br><br>   Defendants | Case No.:<br><br>**COMPLAINT**<br>(R.I.C.O. based on predicate acts of Mail Fraud & Wire Fraud), Common Law Fraud |

## JURISDICTION AND VENUE

1)       Jurisdiction is based on 18 U.S.C. § 1964(c) (the Federal Racketeer Influenced and Corrupt Organizations Act) and 28 U.S.C § 1331.  Jurisdiction over Plaintiffs' related state and common law claims is based on the doctrine of supplemental jurisdiction 28 U.S.C § 1367.

2)       Venue in this District is based on §§ 1391(b)(1)-(2) because Plaintiff's claim arose in this district and because Defendants reside in this district.

3) Plaintiff LWCI, a California corporation with its principal place of business Livermore, California, is engaged in the business of developing a Hotel project in Livermore, California. Plaintiff Pilot, Inc., dba Pilot Automotive, a California corporation, is engaged in developing energy storage system alternatives in the Los Angeles area. Plaintiff Casa Hernandez, Inc. is a California Public Benefit corporation engaged in the enterprise of developing affordable housing alternatives for Veterans and is based in the Victorville area.

4) Defendants are the owners and operators of a business engaged in procuring funding for Plaintiffs' development projects through grants and loans and are all based in Rancho Cucamonga, CA, located within this District.

## GENERAL ALLEGATIONS

5) This action is brought to recover damages suffered by Plaintiffs as a result of Defendants' pattern of criminal practices and illegal enterprise scheme under the Federal RICO Act, 18 U.S.C. § 1964(c).

6) Between 2021 and early 2024, Plaintiffs paid to Defendants advance fees to secure development funding for their respective projects in substantial amounts. All of the foregoing fees were paid to Defendants on condition that if the funding did not materialize within the agreed upon time frames, 100% of the advance fees would be refunded to Plaintiffs. Defendants never obtained a single dollar of funding for any Plaintiff and have failed to refund any amount.

7) Defendants are not Native Americans, are not members of any recognized tribe or tribal organization, are not a recognized CDFI or native CDFI, and are not a certified CDE despite their repeated and continuous representations to the contrary. Plaintiffs, who also are not Native Americans, paid substantial advance fees to the Defendants in reliance on their reasonable and good faith belief in the foregoing misrepresentations and would never have done so otherwise.

8) At the time of receipt of the advanced fees paid by Plaintiffs, Defendant David Vargas was CEO of the other named Defendant non-profit and for-profit California corporations all of which are working together as co-conspirators, co-actors, co-agents and are intertwined and interconnected on financial, political, promotional and practical levels.

9) Defendant David Vargas installed his ex-wife and ex step-kids, who are native Americans, as board members and/or officers of his privately held Defendant corporations as a front, to falsely portray his organizations as able to procure Native American grants and loans for humanitarian development projects organized by non-native Americans like those proposed by the Plaintiffs.

10) Defendant David Vargas and his Defendant corporations also obtained Native American grants themselves by falsely portraying themselves as Native American or affiliated with Native Americans, and used those funds outside of their intended purpose *ultra vires* to further finance their illicit scheme and enterprise to defraud the Plaintiffs and dozens of other similarly situated victims.

11) Defendant Vargas and his Defendant corporations working together, mimicked logos and emblems from federally recognized tribes, tribal organizations, and supporting government agencies to falsely portray their own organization as Native American or sanctioned by or working closely with Native American organizations and supporting government agencies to lend credence to their false claims and further lure in unsuspecting and trusting victims like the Plaintiffs.

12) Defendants' enterprise is to promise the Plaintiffs, in bad faith and through mail and wire fraud in interstate commerce, that they can secure substantial grants and loans to fund Plaintiffs' projects knowing that they will never secure such funding. The pattern of criminal conduct that is repeated by Defendants along with their co-conspirators, agents, partners, and associates, is that Defendants obtain information from Plaintiffs and use said information to submit incomplete loan and grant applications on Plaintiffs behalf, but intentionally never complete any of the applications or obtain any funding and like a pyramid scheme continually lure in new and unsuspecting victims to continue the pattern and thereby finance the never-ending fraud.

## Count 1
### (RICO claim of Plaintiff LWCI, LLC against all Defendants)

13) Plaintiffs incorporate each and every allegation set forth in paragraphs 1 to 12 above as if fully set forth herein.

14) At the end of 2021 and the beginning of 2022 Plaintiff LWCI, LLC paid advance fees to Defendants in the aggregate amount of $125,000.00 on the express condition that if Defendants did not procure loans and grants in the aggregate amount of about four million dollars on or before November of 2022 then Defendants would refund 100% of the advance fees.

15) After payment of the foregoing advance fees, there began a series of continuous phone calls, e-mails, and mail exchanged between Defendants, their co-conspirators, and Plaintiff LWCI over the course of about 12 months.

16) The foregoing phone calls, e-mails and mail were transmitted by Defendants and their co-conspirators repeatedly using the same phone numbers, addresses, IP addresses, and from the same computers.

17) Within the foregoing fraudulent communications made in interstate commerce, Defendants and their co-conspirators consistently claimed that they were experienced, qualified, and knew how to obtain substantial funding through grants and loans to fund Plaintiff's development projects. Defendants stated that funding was imminent if only Plaintiff could provide all of the information required by the lenders and grant providers.

18) Plaintiff LWCI immediately and consistently provided to Defendants full and accurate information in response to every request therefore to the fullest extent possible.

19) Defendants promised to apply for and obtain multiple grants and loans to achieve full funding for Plaintiff LWCI's project which was to develop a Hotel in Livermore, California with the following features and community benefits: 30 luxury guest rooms, full-service farm-to-table restaurant, and substantial guest amenities to support an overall luxury guest experience in conjunction with nearby vineyards and wine tasting facilities to capitalize on the history and significance of Livermore, California as the leading hub of California vineyards and wine-making.

20) In fact, Defendants never fully completed a single grant or loan application and only made a few initial incomplete submissions.

21) Grant applications routinely require a letter of support from the Congressperson representing the applicant's district. Over the course of about 1 year, Plaintiff LWCI's Congressperson offered to provide said letter of support for Plaintiff LWCI's grant applications but was prevented from doing so by Defendants' failure to provide the name of the grant, grant number, and grant purpose. Defendants repeatedly and continuously blamed Plaintiff LWCI for failing to provide the foregoing letter of support all the while knowing that the Congressperson could not provide same without the name of the grant being applied for as well as its grant number and purpose, which Defendants intentionally withheld and/or failed to provide.

*WHEREFORE*, Plaintiff LWCI requests an award of general damages in the amount of $ 125,000.00 against Defendants jointly and severally plus lost profits in an amount to be determined at trial.

## Count 2
### (RICO claim of Plaintiff Pilot Automotive against all Defendants)

22) Plaintiffs incorporate each and every allegation set forth in paragraphs 1 to 21 above as if fully set forth herein.

23) On or about January and February, 2024 Plaintiff Pilot, Inc., dba Pilot Automotive paid Defendants an advance fee in the aggregate amount of $ 30,000 cash plus title to a custom trailer demonstrating Plaintiff Pilot Automotive's humanitarian energy storage system invention with a value of $ 25,000.00. Said advance fees and property was paid on the express condition that if Defendants failed to procure funding for Plaintiff Pilot Automotive's project in the amount of Three Million Dollars by March 2024, Plaintiff Pilot Automotive's advance fees and property would be 100% refunded.

24) Thereafter, Defendants, on behalf of Plaintiff Pilot Automotive, made an initial incomplete application for a loan from Chino Commercial Bank.

25) Said loan application to Chino Commercial Bank was never completed despite Plaintiff Wang's best efforts to complete the same due to Defendants refusal and/or failure to provide information essential to its completion.

26) Leading up to and after payment of the foregoing advance fees, there began a series of continuous phone calls, e-mails, and mail exchanged between Defendants, their co-conspirators, and Plaintiff Pilot Automotive over the course of about months.

27) The foregoing phone calls, e-mails and mail were transmitted by Defendants and their co-conspirators repeatedly using the same phone numbers, addresses, IP addresses, and from the same computers.

28) Within the foregoing fraudulent communications made in interstate commerce, Defendants and their co-conspirators consistently claimed that they were experienced, qualified, and knew how to obtain substantial funding through grants and loans to fund Plaintiff's development projects and that said funding was imminent if only Plaintiff could provide all of the information required by the lenders and grant providers.

29) Plaintiff Pilot Automotive immediately and consistently provided to Defendants full and accurate information in response to every request therefore to the fullest extent possible.

30) Defendants promised to apply for and obtain multiple grants and loans to achieve full funding for Plaintiff Wang's project which was to replicate state-of-the-art energy storage systems per the demonstration trailer that Plaintiff Pilot Automotive had completed and given to Defendants.

31) In fact, Defendants never fully completed a single grant or loan application and only made a single initial incomplete submission.

*WHEREFORE*, Plaintiff Pilot Automotive requests judgment in the amount of $ 55,000.00 against the Defendants jointly and severally plus lost profits in an amount to be determined at trial.

## Count 3
### (RICO claim of Plaintiff Casa Hernandez, Inc., against all Defendants)

32) Plaintiffs incorporate each and every allegation set forth in paragraphs 1 to 31 above as if fully set forth herein.

33) On or about November, 2022 Plaintiff Casa Hernandez, Inc., paid Defendants an advance fee in the aggregate amount of $ 100,000 cash in exchange for Defendants' promise to procure a minimum of $ 400,000.00 in grant funding to enable Plaintiff to purchase an existing motel in Victorville, CA and convert said motel into affordable housing for US veterans. Said advance fee was paid on the express condition that if Defendants failed to procure funding for Plaintiff Casa Hernandez's project within a few months, Plaintiff Casa Hernandez's advance fees would be 100% refunded.

34) Leading up to and after payment of the foregoing advance fees, there began a series of continuous phone calls, e-mails, and mail exchanged between Defendants, their co-conspirators, agents, partners, and representatives and Plaintiff Casa Hernandez over the course of about 9 months.

35) The foregoing phone calls, e-mails and mail were transmitted by Defendants and their co-conspirators, agents, partners, and representatives repeatedly using the same phone numbers, addresses, IP addresses, and from the same computers.

36) Within the foregoing fraudulent communications made in interstate commerce, Defendants and their co-conspirators consistently claimed that they were experienced, qualified, and knew how to obtain substantial funding through grants and loans to fund Plaintiff's development projects and that said funding was imminent if only Plaintiff could provide all of the information required by the lenders and grant providers.

37) Plaintiff Casa Hernandez immediately and consistently provided to Defendants full and accurate information in response to every request therefore to the fullest extent possible.

38) Defendants promised to apply for and obtain multiple grants and loans to achieve full funding for Plaintiff Casa Hernandez's project which was to convert an existing motel in Victorville, CA into affordable housing for US Veterans.

39) In fact, Defendants never fully completed a single grant or loan application on behalf of said Plaintiff and knew from the outset that they would never raise any funding whatsoever as Defendants knew there were no grants for which Plaintiff Casa Hernandez, a non-tribal member and non-tribal organization could qualify for.

*WHEREFORE*, Plaintiff Casa Hernandez requests judgment in the amount of $ 100,000.00 against the Defendants jointly and severally plus lost profits in an amount to be determined at trial.

### Count 4
### (Common Law Fraud claim of all Plaintiffs against all Defendants)

40)	Plaintiffs incorporate and re-allege every allegation set forth in Paragraphs 1 to 39 above as if fully set forth herein.

41)	Among other falsehoods, Defendants repeatedly and intentionally misrepresented to Plaintiffs that they had a high success rate in obtaining grants and loans.

42)	Defendants misrepresented successful grant applications for previous clients which did not take place.

43)	Defendants falsely claimed that all advance fees from Plaintiffs were covered under a three million dollar consulting insurance errors and omissions policy.

44)	Defendants misrepresented the professional qualifications of themselves and their "staff grant writers."

45)	Defendants falsely claimed that grant writing fees would be refunded by the State of California upon completion of the grant applications.

46)	Defendants misrepresented the number of grants being applied for, the nature of the grants, Plaintiffs qualifications therefore, and the likelihood of receiving funding.

47) Defendants knowingly provided inaccurate timelines regarding the grant process.

48) Defendants repeatedly requested information from Plaintiffs, even after the requested information had already been provided. Defendant then blamed Plaintiffs for incomplete grant and loan applications, even though they knew they had already obtained the required information.

49) When Plaintiffs requested receipts and other documentation concerning their advance fee payments, Defendant provided false, incomplete, or misleading information as to how the money was being spent.

50) Defendants continued to solicit money and property from Plaintiffs while having no intention to complete the related grant and/or loan applications.

51) Defendants knew these representations were false when made, or they made the representations recklessly and without regard for the truth of the representations.

52) Defendant's misrepresentations were material. Plaintiffs would not have given any money to Defendant if not for their sincere and reasonable belief in the aforementioned misrepresentations.

53) Defendants intended to induce Plaintiffs to rely on Defendant's representations. Defendants knew that Plaintiffs would not provide money if they knew that the grant and loan applications would not be completed.

54) Plaintiffs' reasonably relied on Defendant's representations, and such

reasonable reliance was a substantial factor in the damages Plaintiffs suffered, the exact amount to be proved at trial.

**(Treble Damages and Attorney Fees
as to all Defendants)**

55) Plaintiff incorporates each and every allegation set forth in paragraphs 1 to 54 above as if fully set forth herein.

56) As a result of Defendant's failure to refund Plaintiffs payment of advance fees, Plaintiffs have been forced to pay attorney's fees and costs in order to bring this action to require Defendants to comply with their statutory duties.

57) RICO entitles Plaintiffs to recover treble damages and attorney's fees incurred to collect any balance due from Defendants.

*WHEREFORE*, Plaintiffs prays as follows:

a. Plaintiffs request judgment against each Defendant, jointly and severally, for general damages, treble damages, lost profits, costs, and attorney's fees.

b. Such other relief as this court deems just and proper.

Executed on October 4, 2024.    LAW OFFICES OF MITCH WALLIS

1286 University Ave #338 San Diego, CA 92103

By /s/Mitch Wallis
Mitch Wallis
*Attorney for Plaintiffs*